**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

GERALD ANDREWS                                   :
               *Plaintiff*,

            v.                              :

KNIGHT, *Philadelphia Corrections Officer
Sergeant, individually and in his official capacity*;  :
FREDRICKS, *Philadelphia Corrections Officer,
individually and in his official capacity*;            CIVIL ACTION
SEAGRAVES, *Philadelphia Correction Officer,*   :   NO. 17-0962
*individually and in his official capacity*; HOBER,
*Philadelphia Corrections Officer, individually and
in his official capacity;* YOUNG, *Philadelphia*   :
*Correction Officer, individually and in his official
capacity;* WALKER, *Philadelphia Correction
Officer, individually and in his official capacity*;   :
CITY OF PHILADELPHIA; CAPT. RAHMAN;
CO1 BLAIR; CAPT. LOVE; CAPT. GRAY;
CO1 JEFFERSON; CO1 DOTSON; MAJOR          :
MARTIN; CO1 MULVENNA; MAJOR MAY;
CO1 BUTLER; LOUIS GIORLA; and,
CAPT. JOHNSON                                    :
              *Defendants*.

**MEMORANDUM**

Jones, II   J.                                    **November 7, 2022**

### I.  Introduction

The within action stems from time Plaintiff Gerald Andrews spent as an inmate housed

at the Philadelphia Industrial Correctional Center (hereinafter "PICC") in 2015.  Andrews

alleges that while at PICC, Sergeant Christopher Knight, Major Claudette Martin, Captain

1

James Love, Corrections Officer Cherve Dotson, former Commissioner of the Philadelphia Department of Prisons Louis Giorla, and the City of Philadelphia[1] violated 42 U.S.C. § 1983 by infringing on several of his constitutional rights.  Specifically, Plaintiff's Second Amended Complaint alleges Excessive Force under the Eighth Amendment (Count I); Retaliation under the First Amendment (Count II); Malicious Prosecution (Count III) and False Arrest (Count IV) under the Fourth Amendment; and, Municipal Liability[2] (Count V).

Presently before the court is Defendants Martin, Love, Dotson, Giorla, and City of Philadelphia's Motion for Summary Judgment on all claims, as well as Defendant Knight's Partial Motion for Summary Judgment on Plaintiff's First and Fourth Amendment claims.  For the reasons set forth herein, said Motions shall be granted in part and denied in part.

## II.  Statement of Facts[3]

The undisputed facts[4] establish that Gerald Andrews was incarcerated at PICC, where he was assaulted three times[5] on October 5, 2015.  (SUF ¶ 9.)  On the night of the incidents, Andrews was in the "rotunda," waiting to receive his medication.  (SUF ¶ 12.)  Andrews testified that while in the rotunda, Sergeant Knight informed Andrews he was going back to "the hole,"

---

[1] The remaining captioned Corrections Officers have previously been dismissed from this action.

[2] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978) (permitting liability against a municipality under 42 U.S.C. § 1983 "when a constitutional deprivation results from an official policy or custom.").

[3] In an effort to provide context for this Court's analysis, disputed facts are included herein and are identified by their source: testimony.

[4] For purposes of the instant discussion, this Court shall refer to Defendant's Statement of Undisputed Facts as "SUF" and Plaintiff's Response thereto as "RSUF."  Additionally, this Court shall refer to Plaintiff's Statement of Additional Disputed Material Facts as "SDMF" and Defendant's Response thereto as "RSDMF."

[5] The court notes that although Plaintiff disputes characterizing the incidents as "first," "second," and "third" assaults, this is the manner in which the incidents were referred to and addressed during Plaintiff's deposition.  Accordingly, this Court shall do the same for the sake of consistency.

and then proceeded to pepper spray him. (SUF ¶ 16.)  At the time Plaintiff was being pepper sprayed, Sergeant Knight and Corrections Officer Dotson were the only officers in the rotunda. (SUF ¶ 17.)  However, as this "first assault" continued, Sergeant Knight and yet another Corrections Officer—Defendant Young—"kicked, stomped, and punched" him. (SUF ¶ 19.) Following the "first assault," Knight and Young dragged Plaintiff into a doorway that led to the corridor by the elevators. (SUF ¶ 18.)  There, Corrections Officers Seagraves, Mulvenna, Hober, Fredericks and Walker engaged in the "second assault," when they began "stomping, punching, and kicking" Plaintiff. (SUF ¶¶ 20-21.)  These same Corrections Officers dragged Andrews through the doorway into another corridor, where they assaulted him for a "third" time and then proceeded to pin him on the floor and handcuff him. (SUF ¶¶ 23-24, 27, 29.)

On October 6, 2015, Sergeant Knight filed a "Complaint or Incident Report," advising the Philadelphia Police Department that he had been assaulted by Andrews. (SDMF ¶ 4.) Specifically, Sergeant Knight told Detective Brukhimer in pertinent part that Andrews "took a fighting stance in front of me and then swung his fist at me. He missed." (RSDMF ¶ 6; Pl.'s Opp'n Mot. Summ. J. Ex. D.)

From October 6, 2015 through October 15, 2015, Andrews was housed in PICC's J-Unit. (RSDMF ¶ 30; Pl.'s Opp'n Mot. Summ. J. Ex. M.)  When Plaintiff was first transferred to the J-Unit, he was placed in a cell whose prior inhabitant "had flooded the toilet and trashed it and made it uninhabitable with feces and urine[.]"  (SDMF ¶ 31.)  Plaintiff was placed in this cell despite the fact that he walked past and observed several other cells on the J-Unit that did not have inmate tags on the door, indicating they were available. (SDMF ¶ 32.)  Plaintiff made verbal complaints about his cell to Major Martin, May, and Gray while they did rounds through the J-Unit and requested that he be moved. (SDMF ¶ 33.) Plaintiff also attempted to file written

grievances  "about eight or nine times" during this period but was denied the paperwork necessary to do so. (SDMF ¶ 34.)  However, on October 7, 2015, Andrews was able to submit a written "sick call request" reporting the assaults by Sergeant Knight and others. (RSDMF ¶ 39; Pl.'s Opp'n Mot. Summ. J. Ex. LL.)

While housed in J-Unit, Sergeant Knight and Corrections Officers Butler, Seagraves, Hober, and Mulvenna were assigned to the Unit. (RSDMF ¶ 39; Pl.'s Opp'n Mot. Summ. J. Ex. LL.)  Andrews testified that during this time, the officers threw his food on the floor, kicked his door, yelled obscenities at him, and consumed or threw specialty diet shakes at his door that had been prepared for him by the kitchen. (RSDMF ¶ 38.)  In response, on October 12th, Andrews filed his first request for protective custody. (RSDMF ¶ 41; Pl.'s Opp'n Mot. Summ. J. Ex. PP.) On October 15, 2015, Plaintiff was ultimately transferred to  another room in the J-Unit. (SDMF ¶ 35.)  However, when his request for protective custody was ignored, Andrews filed a second request on November 13, 2015. (RSDMF ¶ 42; Pl.'s Opp'n Mot. Summ. J. Ex. PP.)  Finally, on January 15, 2016, Andrews' request for protective custody was approved, and he was transferred out of PICC on February 9, 2016. (RSDMF ¶ 43; Pl.'s Opp'n Mot. Summ. J. Ex. PP.)  According to Defendant Love, when an inmate requests protective custody from correctional officers, a transfer to another facility would be the remedy and action would be taken immediately. (RSDMF ¶ 44; Pl.'s Opp'n Mot. Summ. J. Ex. L at 124:2-16.)

Following the incident on October 5, 2015, Plaintiff was ordered to a disciplinary hearing on October 19, 2015, where he was charged with: (1) abuse of medical services; (2) abuse of medical services; (3) disturbing other inmates or staff; (4) threating an employee or visitor with harm; (5) disturbing other inmates or staff; (6) refusal to comply with a valid order; and, (7) disrespecting any staff member. (SDMF ¶ 19.)  The disciplinary hearing was overseen by

4

Defendant Love. (SDMF ¶ 20.) Although Plaintiff pled not guilty to all open charges, he was found guilty on same. (SDMF ¶ 21.)  In so finding, Defendant Love relied on the investigative package prepared by the investigating lieutenant, including the statements made by Defendants Knight, Young, Mulvenna, Hober, Seagraves, Butler, Fredericks, and Walker, and other information. (SDMF ¶ 22.)   Defendant Love imposed disciplinary sanctions on Plaintiff comprised of thirty (30) days of punitive segregation with an undetermined period of administrative segregation to follow.  (SDMF ¶ 25.)  The imposed disciplinary sanctions was Defendant Love's decision to make, free of consultation with anyone else. (SDMF ¶ 25.) The additional undetermined sanction period of administrative segregation was based on Plaintiff's disciplinary history for "safety precautions and reasons." (SDMF ¶ 26.)  According to Defendant Love, after Plaintiff served the thirty days of punitive time, with any credit applied for punitive time immediately following the October 5, 2015 incident, it would have been up to the Deputy Warden at PICC to decide how much more time Plaintiff would have to serve under admin seg. (SDMF ¶ 27.)

On the date of Plaintiff's disciplinary hearing, Defendant Love knew Defendant Knight and had supervised him on the day shift at PICC between 2010 and 2013. (SDMF ¶ 23.) Defendant Love claimed that on the date of Plaintiff's disciplinary hearing, he was not aware that: in 2008 Defendant Knight had been suspended for 5 days for a violation of an inmate's rights resulting in physical injury; in 2010 and 2011, Defendant Knight had been demoted and then reinstated following a 10-day suspension for violations of inmates' rights resulting in physical injuries; in 2012, Defendant Knight had been suspended 10 days for violation of an inmate's rights resulting in physical injury; or, that the City of Philadelphia Prison System had settled two federal cases in 2011 and one federal case in 2012 involving Defendant Knight as a named defendant for

violating prisoners' rights involving the use of excessive force.  (SDMF ¶ 24.)  Defendant Love did not believe he needed to know about these facts or should have been aware of Defendant Knight's disciplinary history.  (SDMF ¶ 24.)

Defendant Knight's statement to Detective Brukhimer was ultimately utilized in an Affidavit of Probable Cause to initiate criminal proceedings against Andrews. (Pl.'s Opp'n Mot. Summ. J. Ex. F.)  Plaintiff was formally arrested on those charges on January 8, 2016.  (SDMF ¶ 9.)  At Plaintiff's Preliminary Hearing on January 26, 2016, Defendant Knight testified that Plaintiff "lunged and swung" a "closed fist," "in a fighting stance," "towards [his] facial area." (SDMF ¶ 10.)  Defendant Knight also agreed there was "more [he] could have said about what exactly happened" when providing his statement to the Philadelphia Police on October 6, 2015. (SDMF ¶ 12.)  Defendant Knight further agreed Plaintiff's movement was "not a thrown punch, it was a raised arm."  (SDMF ¶ 13.)  Video footage from the night of October 5, 2015 captures the initial interaction between Defendant Knight and Plaintiff.  (SDMF ¶ 14.)  Defendant Knight agreed, with respect to the video, that he "[doesn't] see  anything on there that indicates Mr. Andrews took a swing at [him]."  (SDMF ¶ 15.)  Defendant Knight agreed that "nowhere in the video can we see Mr. Andrews raise a fist or hand towards" him.  (SDMF ¶ 16.)  Defendant Knight further agreed that, while in his written use of force report he stated Plaintiff "continued to swing at [him] after [he] applied the pepper spray," the video does not depict same.  (SDMF ¶ 17.)  The criminal charges initiated against Plaintiff were ultimately dropped before trial in June 2016.  (SDMF ¶ 18.)

**III.  Standard of Review**

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).  "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted).  Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).  "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted).  Accordingly, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  To that end, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002)) (internal quotation marks omitted). Instead, an affiant must set forth specific facts that reveal a genuine issue of material fact. *Id.*  A court must "view the facts and any reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003). However, if a party fails to properly address another party's assertion of fact, a court may consider the fact undisputed and grant summary judgment. *See* Fed. R. Civ. P. 56(e)(2)-(3); *see also Judge C. Darnell Jones II Chambers Policies and Procedures* (rev'd Feb. 23, 2022), http://www.paed.uscourts.gov/documents/procedures/jonpol.pdf  ("The Court will not consider any description of a fact that is not supported by citation to the record. Statements of Material Facts in support of or in opposition to a motion for summary judgment must include specific and not general references to the parts of the record that support each of the statements, such as the title of or numbered reference to a document, the name of a deponent and the page(s) of the deponent's deposition, or the identity of an affidavit or declaration and the specific paragraph relied upon. Pinpoint citations are required.

## IV.  Discussion[6]

### A.  Excessive Force

In Count I of his Second Amended Complaint, Plaintiff brings a claim against "all defendants" for Excessive Force arising under 42 U.S.C. § 1983, in violation of the Eighth Amendment. (Sec. Am. Compl. ¶ 161).  "An Eighth Amendment claim has an objective and subjective component." *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).  "The defendant must act with a 'sufficiently culpable state of mind,' and the conduct must be objectively harmful enough to violate the Constitution." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)).  "In evaluating the subjective component of an excessive force claim, the Court should consider 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018)).  In doing so, the court considers five factors:

> (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them, and

---

[6] For purposes of the instant Motion, Defendants Giorla, Martin, Love, Dotson and the City of Philadelphia seek judgment on all counts of Plaintiff's Second Amended Complaint, while Defendant Knight seeks judgment on Plaintiff's Malicious Prosecution, False Arrest, and Retaliations claims.  Defendants offer no  discussion on the issues as they pertain to Defendants Giorla, Martin, Love and Dotson, except to say said Defendants did not have "any personal involvement in the constitutional injuries" and "[t]here is no record evidence that suggests, much less proves, that [said Defendants] either participated in the alleged constitutional violations for excessive force, retaliation, malicious prosecution or false arrest."  (Defs.' Br. Supp. Mot. Summ. J. 5.)  Although Defendants cite to their SUF in support of these contentions, the specific paragraphs upon which they rely only pertain to Plaintiff's Excessive Force claim.  Moreover, Defendants' Reply Brief speaks to Plaintiff's newly added Failure to Intervene claim against Giorla, Martin, Love and Dotson but is similarly devoid of any further argument pertaining to these Defendants in the context of Counts II through IV of Plaintiff's Second Amended Complaint.

(5) any efforts made to temper the severity of the forceful response.

*Id.*

As a preliminary matter, Defendants concede Plaintiff's Excessive Force claim may properly proceed against Defendants Knight, Hober, Fredericks, Butler, Seagraves and Young. (Defs.' Mot. Summ. J. 15.)  Additionally, Plaintiff does not dispute the fact that Defendants Giorla, Dotson, Martin, or Love never used any force against him.   (RSUF ¶¶ 17, 20, 24, 28.) Instead, in response to the instant Motion, Plaintiff raises a "Failure to Intervene" claim against said Defendants for the first time.  (Pl.'s Opp'n Mot. Summ. J. 4-7.)  To that end, Plaintiff cites *Smith v. Mensinger* as permitting a failure to intervene claim against corrections officers under the Eighth Amendment. (Pl.'s Opp'n Mot. Summ. J. 4) (citing *Smith v. Mensinger*, 293 F.3d 641 (3d Cir. 2002)). In *Smith*, the plaintiff specifically included a claim in his Second Amended Complaint that Defendants  ". . . violated plaintiff's right to be free from cruel unusual punishment, which is guaranteed by the Eighth Amendment of the United States Constitution . . . by ***failing to stop the use of such force against plaintiff notwithstanding an opportunity to do so***." *Smith v. Mensinger, et al.*, 2:97-cv-03613-ER (E.D. Pa. Aug. 15, 2003), ECF No. 97 ¶ 18 (emphasis added).  While Plaintiff herein correctly interprets *Smith*, his Second Amended Complaint is devoid of any allegations of a failure to intervene by Defendants Giorla, Dotson, Martin, or Love and is therefore distinguishable. (Sec. Am. Compl. ¶¶ 149-161).[7]

In Paragraph 97 of Plaintiff's Second Amended Complaint, Plaintiff alleges "All of the defendants, other than the City and Commissioner, were involved in brutally assaulted [sic]

---

[7] This Court notes that the instant matter is not only distinguishable on the face of the Complaints, but also by reason of the fact that the lack of such language in the Second Amended Complaint deprived Defendants Giorla, Dotson, Martin and Love of an opportunity to conduct discovery on a "Failure to Intervene" claim.

Plaintiff by dragging, kicking, punching and stomping him in the head, face, ribs, back, buttocks and legs as well as attempting [sic] to sodomized [sic] Plaintiff with their walkie talkies. (Sec. Am. Compl. ¶ 97).  Then, in the context of his *Monell* claim, Plaintiff alleges in pertinent part that "[t]he acts and omissions of the Defendants deprived Plaintiff of his 1st, 4th, 8th and 14th Amendment rights and immunities of the U.S. Constitution, as well as 42. U.S.C. § 1983."  (Sec. Am. Compl. ¶ 100.)  Last, Plaintiff generally avers "[t]he actions of all the Defendants, through their knowledge and acquiescence of the assault on Plaintiff, establishes their concurrent liability because the assault committed on Plaintiff was done maliciously and sadistically to cause harm and not done to maintain and restore order."  (Sec. Am. Compl. ¶ 161.)[8]  However, when assessed in the context of the physical assault(s) that occurred on October 5, 2015, none of these allegations against Defendants Giorla, Martin, or Love are borne out by the record—including Plaintiff's own testimony.  *See* Andrews' Dep. 137, 140-41; ECF No. 91-3 at 137, 140-41 (Knight, Young, Butler, Seagraves, Mulvenna, Hober, Fredericks, and Walker were involved in or present at the time of the second assault); and, Andrews' Dep. 154-156, 164-66; ECF No. 91-3 at 154-56, 164-66 (Knight, Butler, Seagraves, Mulvenna, Hober, Fredericks, and Walker were involved in or present at the time of the third assault and Officer Dotson yelled at the other officers to stop, saying "That's enough, let him up.").

It is well settled that a prison official cannot be held liable for a civil rights violation if s/he was "not personally involved in the complained-of actions[.]"  *Sutton v. Rasheed*, 323 F.3d

---

[8] This Court notes that although Plaintiff's Second Amended Complaint was filed *pro se* and as such, would ordinarily be afforded deference, Plaintiff was subsequently appointed counsel. (ECF No. 53.)  Instead of seeking leave to amend Plaintiff's *pro se* Complaint, counsel elected to rest on said Complaint and have the same served upon Defendants.  (ECF No. 54.)  Although counsel did subsequently amend the *ad damnum* clause contained within Plaintiff's Second Amended Complaint (ECF No. 71), no other changes were requested or made.  As such, no deference is warranted.

236, 249 (3d Cir. 2003); *see also Saisi v. Murray,* 822 F. App'x 47, 48 (3d Cir. 2020)

("Defendants in civil rights actions 'must have personal involvement in the alleged wrongs to be

liable and cannot be held responsible for a constitutional violation which he or she neither

participated in nor approved.'") (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir.

2007)).  An exception to this rule would apply if Plaintiff claimed supervisory liability and was

able to demonstrate that any defendant who held a supervisory position had "'actual knowledge

and acquiescence' of the excessive force subordinates used[.]"  *Moore v. City of Phila*., Civil

Action No. 14-133, 2014 U.S. Dist. LEXIS 27894, at *11-12 (E.D. Pa. March 5, 2014) (quoting

*Baker v. Monroe Twp*., 50 F.3d 1186, 1194 (3d Cir. 1995)). Plaintiff herein has not done so with

respect to Count I.  Instead, Plaintiff now claims—in his Response to the instant Motion—

Defendants Dotson, Love, Martin, and Giorla failed to intervene in the assault(s).[9] (Pl's. Opp'n

Defs.' Mot. Summ. J. 4-7).  However, a "plaintiff may not amend his Complaint through

arguments in his brief in opposition to a motion for summary judgment." *Waugaman v. City of

Greensburg*, 841 F. App'x 429, 433 (3d. Cir. 2021) (citing *Shanahan v. City of Chicago*, 82 F.3d

776, 781 (7th Cir. 1996)).

     In *Waugaman*, the plaintiff alleged an excessive force claim against the defendant, falsely

accusing him of involvement in an assault. *Waugaman v. City of Greensburg*, No. 17-330,  2019

U.S. Dist. LEXIS 95887, at *16 (W.D. Pa. June 7, 2019).  Once the plaintiff's testimony

---

[9] In his Second Amended Complaint, Plaintiff alleged "Defendants Natasha Young and Chereye
Dotson began to assist Defendant Knight in assaulting Plaintiff."  (Compl. ¶ 42.)  However,
during his deposition, Plaintiff testified that all of the officers involved in or present at the time
of the assault(s) were males.  (Andrews' Dep. 119-20; ECF No. 91-3 at 119-20.)  Plaintiff is now
attempting to add a Failure to Intervene claim against Defendant Dotson.  This Court has
reviewed Defendant Dotson's deposition testimony and finds it to be inconsistent.  However,
there is no dispute that Defendant Dotson was not directly involved in the assault(s) against
Plaintiff and was not acting in a supervisory position at said time.  As such—and for the reasons
set forth above—said claim fails.

exonerated the defendant on the excessive force claim, he attempted to argue that the court should instead consider the excessive force as a failure to intervene. *Id.* The District Court rejected this argument. *Id.* at *16-17. The Third Circuit affirmed, holding that a plaintiff cannot introduce a failure to intervene theory in their opposition to a Motion for Summary Judgment where their Second Amended Complaint only alleged an excessive force claim. *Waugaman,* 841 F. App'x at 433.

The Excessive Force claim contained within Plaintiff's Second Amended Complaint is completely devoid of any allegation like that under review in the authority offered by Plaintiff: "[Defendants] . . . violated plaintiff's right to be free from cruel unusual punishment, which is guaranteed by the Eighth Amendment of the United States Constitution . . . by failing to stop the use of such force against plaintiff notwithstanding an opportunity to do so." (Smith Sec. Am. Compl. ¶ 18.)  Thus, because no Failure to Intervene claim against these Defendants exists and because the record is devoid of any evidence of physical force by them, summary judgment in favor of said Defendants is appropriate.

### B.  Retaliation[10]

Moving Defendants next seek judgment on Plaintiff's Retaliation claim (Count II of Second Amended Complaint), in which Plaintiff maintains Defendants violated his 1st Amendment right to complain and file grievances regarding the assault(s) and conditions of confinement.  (Sec. Am. Compl. ¶¶ 162-169.)  "A prisoner alleging that prison officials have retaliated against him for exercising his constitutional rights must prove: 1) the conduct in which

---

[10] Although Plaintiff discusses his Retaliation claim under a subsection whose title pertains only to Defendant Knight, said discussion implicates other named Defendants and is supported by citations to the record.  As such, this Court shall address Plaintiff's Retaliation claim in the context of all named individual Defendants.

he was engaged was constitutionally protected; 2) he suffered 'adverse action' at the hands of prison officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." *Rivera v. McCoy*, 729 F. App'x 142, 144 (3d Cir. 2018) (quoting *Carter v. McGrady*, 292 F.3d 152, 157-8 (3d Cir. 2002)).  A prisoner's filing of grievances is a constitutionally protected activity. *Milhouse v. Carlson*, 652 F.2d 371, 372 (3d Cir. 1981). Further, an "adverse action" is one that is  ". . . sufficient 'to deter a person of ordinary firmness'  from exercising his constitutional rights." *Brant v. Varano*, 717 F. App'x 146, 149 (3d Cir. 2017) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  Finally, a plaintiff can establish the requisite causal connection for retaliation by showing either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 759 (3d Cir. 2019).

Defendants herein do not dispute the fact that Plaintiff's filing of grievances in this case constituted protected conduct.  Nevertheless, no Defendants except Knight rebut Plaintiff's evidence of retaliation.  This Court finds that although there is no evidence of record to implicate Defendants Giorla or Dotson in any retaliation against Plaintiff, there is ample evidence to demonstrate that Moving Defendants Knight, Martin and Love each played a role in the events that occurred after October 5, 2015.

### 1.  Defendants Giorla and Dotson

A defendant must have "'personal involvement in the alleged wrongdoing' in order to be liable under § 1983 because individual liability 'cannot be predicated solely on the operation of *respondeat superior*.'"  *Walsifer v. Borough of Belmar*, 262 F. App'x 421, 425 (3d Cir. 2008) (quoting *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)).  In these instances of retaliation,

there is nothing in the record implicating Defendants Giorla or Dotson in retaliatory conduct. *See* (RSDMF ¶ 39; Pl.'s Opp'n Mot. Summ. J. Ex. LL) (Defendants Knight, Butler, Seagraves, Hober, and Mulvenna worked shifts on J-Unit during the period Plaintiff was held there.); Pl.'s Opp'n Mot. Summ. J. Ex. PP (requests for protective custody sent to Defendant Martin). Therefore, based upon the record presented by Plaintiff, no reasonable jury could find that Defendants Giorla or Dotson were personally involved in any of the aforementioned retaliatory conduct, summary judgment is granted for said Defendants.

## 2.  Defendant Martin

Plaintiff filed his first "sick call request" on October 7, 2015, one day after the assault. Plaintiff testified that after being moved to the J-Unit, he lodged complaints about his treatment with Defendant Martin but they went unanswered and he was not able to lodge a written grievance until days later.  (SDMF ¶¶ 33-35.)  On October 12, 2015, Plaintiff filed his first written request for protective custody with Defendant Martin. (RSDMF ¶ 41; Pl.'s Opp'n Mot. Summ. J., Ex. PP.) After not receiving a response, Plaintiff filed his second request for protective custody on November 13, 2015. (RSDMF ¶ 42; Pl.'s Opp'n Mot. Summ. J. Ex. PP.)  Plaintiff's request was not approved until January of 2016. (RSDMF ¶ 44; Pl.'s Opp'n Mot. Summ. J. Ex. PP.)  According to Defendant Love, when an inmate requests protective custody from correctional officers, a transfer to another facility would be the remedy and action would be taken immediately. (RSDMF ¶ 44; Pl.'s Opp'n Mot. Summ. J. Ex. L at 124:2-16.)  Thus, a genuine issue of material fact exists regarding the manner in which Defendant Martin handled Plaintiff's requests.  Martin's alleged conduct began only 5 days after Plaintiff filed a "sick call request" and persisted for 3 more months, which in itself is unduly suggestive.  Furthermore, even if the temporal proximity of Defendant Martin's ignorance of the protective custody request

is "not so close as to be 'unduly suggestive,' the appropriate test is 'timing plus other evidence.'"
*Watson v. Rozum*, 834 F.3d 417, 424 (3d. Cir. 2016).  Here, the five (5)-day difference between
the initial sick call request and apparent disregard for the protective custody request is
suggestive.  However, when combined with the evidence that protective custody requests are
usually granted immediately, the totality of the evidence establishes a genuine issue of material
fact regarding the causal link between Plaintiff's filing of a sick call request and his unanswered
and/or delayed requests for protective custody.

Because this time period is unduly suggestive, the burden shifts to Defendant Martin to
disprove this claim by showing that her conduct was "reasonably related to legitimate
penological interests." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001) (quoting *Turner v.
Safley*, 482 U.S. 78, 89 (1987)).  Defendant Martin has introduced no such evidence, therefore
her motion for summary judgment on this issue must be denied.

### 3.  Defendant Love

On October 19, 2015, a Disciplinary Hearing was held before Defendant Love, who—
based upon Defendant Knight's account of October 5, 2015 incident—found Plaintiff guilty of
various infractions.[11]  (Pl.'s Opp'n Mot. Summ. J. Exs. K-L.)   If a jury was to believe Plaintiff's
testimony in conjunction with the written grievances, the first two elements of his retaliation
claim would be met.  This Court further finds the time period between the date of the assault(s)
and the date of the disciplinary hearing, coupled with the fact that Defendant Love was
Defendant Knight's supervisor just two years prior and during a time when Defendant Knight

---

[11] Defendant Love testified that although he supervised Defendant Knight between 2010 and
2013, he was unaware of Knight's demotions and suspensions for physical incidents that
occurred in 2010 and 2011.  (SDMF ¶ 24; Love Dep. 99.)  Said Defendant's credibility is an
issue for the trier of fact.

was disciplined for similar acts, is a question of fact for the jury to decide.  Defendant Love has

provided no evidence of record to the contrary.  Accordingly, summary judgment is not

warranted on this claim against Defendant Love.

### 4.  Defendant Knight

Defendant Knight was one of the Corrections Officers who patrolled Plaintiff's unit

during the relevant period. *See* Pl.'s Opp'n Mot. Summ. J. Ex. LL (Defendants Knight, Butler,

Seagraves, Hober, and Mulvenna worked shifts on J-Unit during the period Plaintiff was held at

that location).  Plaintiff testified that after the assault(s), he was assigned to a cell in the J-Unit in

which sewerage had backed up through the toilet and sink, thereby making it uninhabitable.

(Andrews Dep. 195-96, 198-200; ECF No. 91-3 at 195-96, 198-200.)   Plaintiff made several

requests to be transferred to another cell yet was not moved for approximately three days.

(Andrews Dep. 200; ECF No. 91-3 at 200.)   Plaintiff also filed a Sick Call Request on October

7, 2015, in which he reported the assault by Defendant Knight and other named defendants two

days prior. (RSDMF ¶ 39; Pl.'s Opp'n Mot. Summ. J. Ex. LL.)  In said Request, Plaintiff states it

is his "third sick call attempt!"  (Pl.'s Opp'n Mot. Summ. J. Ex. LL.)  Plaintiff testified that

following this October 7, 2015 Request, the defendants who participated in the assault, including

Defendant Knight, began to harass him while he was housed in the "hole." (SDMF ¶¶ 37-39;

Andrews Dep. 203-04, 224-26; ECF No. 91-3 at 203-04, 224-26.)   Said harassment included

throwing his food on the floor, consuming food that was intended for Plaintiff, threatening him,

and yelling obscenities at him. (SDMF ¶¶ 37-39; Pl.'s Opp'n Mot. Summ. J. Ex. LL.)  Plaintiff's

testimony is corroborated by written grievances filed on October 8, 2015 and October 9, 2015, in

which he reported that he had "not eaten in 3 days[,]" was being "starved" because he was not

receiving his food and was enduring "on going [sic] threats." (Pl.'s Opp'n Mot. Summ. J. Ex.

QQ, ECF No. 96-5 at 26-27.)  At most, two days passed between the time of the assault(s), the time Plaintiff filed his complaints regarding same, and the time Defendant Knight began engaging in harassment against Plaintiff.  It is well settled in the Third Circuit that in this context, a period of two days is sufficient to establish causation for the purpose of denying summary judgment.  *See Brant*, 717 F. App'x at 150 (holding that eight days is sufficient to create an inference of causality at the summary judgment stage).  Accordingly, Plaintiff has created a genuine issue of material fact regarding Defendant Knight's retaliation, and summary judgment for said Defendant is denied.

### C.  Malicious Prosecution

In Count III of Plaintiff's Second Amended Complaint, he raises a malicious prosecution claim against all Defendants. However, in his Response to the instant Motion, Plaintiff only addresses said claim with regard to Defendant Knight. (Pl.'s Opp'n Mot. Summ. J. 9-15.)  As such, any potential Malicious Prosecution claim intended against the other defendants, is deemed waived. [12]

"To prove malicious prosecution under [S]ection 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept

---

[12] "When a plaintiff responds to a defendant's summary judgment motion but fails to address the substance of any challenge to particular claims, that failure 'constitutes an abandonment of those causes of action and essentially acts as a waiver of these issues.'" *Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 487 (E.D. Pa. 2014) (quoting *Skirpan v. Pinnacle Health Hosps.*, No. 07-1703, 2010 U.S. Dist. LEXIS 94499, at *17 (M.D. Pa. Apr. 10, 2010)).

of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir.

2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

### 1.   Initiation of Criminal Proceedings

Defendants argue that, in general, corrections officers cannot be charged with malicious

prosecution "because a prosecutor, not a police officer, 'initiates' criminal proceedings against

an individual." (Defs.' Br. Supp. Mot. Summ. J. 6) (internal quotation marks and citations

omitted).   "Although prosecutors rather than police officers are generally responsible for

initiating criminal proceedings, an officer may, however, be considered to have initiated a

criminal proceeding if he or she knowingly provided false information to the prosecutor's

informed discretion." *Henderson v. City of Philadelphia*, 853 F. Supp. 2d 514, 519 (E.D. Pa.

2012).[13]   In *Henderson*, a police officer filed an Incident Report alleging that the plaintiff

engaged in various crimes. *Id.*   The Incident Report then served as the basis for the Criminal

Complaint and subsequent charges that were brought against the plaintiff. *Id.*   When the plaintiff

produced evidence that the officer's account was fabricated, the court held there was a genuine

issue of material fact as to whether the officer initiated the criminal proceeding. *Id.*   Similarly,

Plaintiff herein has created a genuine issue of material fact regarding Defendant Knight's

initiation of criminal proceedings. First, Defendant Knight filed a "Complaint or Incident

Report" the morning following the assault(s), advising the Philadelphia Police Department that

he had been assaulted by Plaintiff. (SDMF ¶ 4; Pl.'s Opp'n Mot. Summ. J. Ex. C.)   Second,

Defendant Knight provided a recorded statement to Detective Brukhimer, which served as the

---

[13] This principle is equally applicable to corrections officers.  *See Wimbush v. City of Philadelphia,* Civil Action No. 16-5783, 2017 U.S. Dist. LEXIS 56586, at *14 (E.D. Pa. April 13, 2017) (finding Plaintiff sufficiently stated a claim for malicious prosecution against corrections officers).

basis for the Affidavit of Probable Cause. (RSDMF ¶ 7; Pl.'s Opp'n Mot. Summ. J. Ex. F.)

Third, in his deposition, Defendant Knight agreed that Plaintiff's movement was "not a thrown

punch, it was a raised arm," and that the video did not provide any evidence of a raised fist or

hand. (RSDMF ¶¶ 8, 15.)  Viewing the evidence in light most favorable to Plaintiff, there exists a

genuine issue of material fact regarding whether the foregoing constituted an "initiation" of the

criminal proceedings by Defendant Knight.

## 2.   Result of Criminal Proceeding

Defendant Knight does not dispute the fact that the criminal proceeding ended in

Plaintiff's favor.  In fact, said Defendant is silent on this issue.  (Defs.' Br. Supp. Mot. Summ. J.

5-7); *see also* (SDMF ¶ 18; RSDMF ¶ 18.)

## 3.   Probable Cause for Initiating Criminal Proceeding

Once again, Defendant Knight does not dispute that Plaintiff can sustain this element of

his Malicious Prosecution claim and is in fact silent on the issue.  (Defs.' Br. Supp. Mot. Summ.

J. 5-7.)  Accordingly, evidence regarding said element is deemed undisputed.

## 4.   Malice

"Malice has been defined as 'ill will in the sense of spite, lack of belief by the actor

himself in the propriety of the prosecution, or its use for an extraneous improper purpose.'"

*Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1999).  "Malice may be inferred from the

absence of probable cause." *Id.*  "Probable cause is proof of facts and circumstances that would

convince a reasonable, honest individual that the suspected person is guilty of a criminal

offense." *Id.* at 1502.  "Probable cause is present so long as there is a 'fair probability that the

person committed the crime at issue.'" *Young v. City of Chester*, 764 F. App'x 262, 264 (3d Cir.

2019) (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)).

As previously stated, a genuine issue of material fact exists regarding Defendant Knight's initiation of criminal proceedings.  Nevertheless, the veracity (or lack thereof) of the statements made by Knight in support of probable cause is not a foregone conclusion.  The Third Circuit has confirmed that "a malicious prosecution claim required more than a false statement to prevail." *Pritchett v. Warrender*, 546 F. App'x 66, 68 (3d. Cir. 2013).  However, in *Pritchett*, the plaintiff never argued to the District Court that it should infer malice from the lack of probable cause. *Id.* The Third Circuit held that "Pritchett cannot fault the District Court for failing to infer malice from his evidence regarding the absence of probable cause, because Pritchett ***never raised that theory to the trial judge.***" *Id.* (emphasis added).  In the present case, Plaintiff explicitly asks this Court to recognize an inference of malice from a lack of probable cause. (Pl.'s Opp'n  Defs.' Mot. Summ. J. 10-11.)  The court could conceivably find malice through Defendant Knight's lack of belief in the propriety of the prosecution *or* through an inference from Defendant Knight's lack of probable cause.  The record establishes the existence of a genuine issue of material fact regarding whether the statements made by Defendant Knight were truthful. "At the summary judgment stage, a court is not to weigh the evidence or make credibility determinations. Instead, these tasks are left for the fact finder." *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) (citing *Petruzzi's IGA Supermarkets v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993).  Thus, this issue of malice is a determination for the jury.

### 5.  Deprivation of Liberty

"A plaintiff asserting a malicious prosecution claim must show some deprivation of liberty consistent with the concept of seizure." *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (citing *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998)).  It is well established in the Third Circuit that a plaintiff who is detained before charges are brought and

after charges are dropped cannot suffer a deprivation of liberty. *See Gray v. Wittman* 839 F.

App'x 669, 671 (3d Cir. 2021) (citing *Curry*, 835 F.3d at 379).  In the present case, Plaintiff was

being detained prior to and during his January 8, 2016 arrest for the charges lodged on the basis

of Defendant Knight's Incident Report. (Pl.'s Opp'n Mot. Summ. J. Exs. G, M.)[14]  On March 10,

2015, Plaintiff was arraigned on firearms charges and did not post bail.  (ECF No. 91-4 at 4.)[15]

On April 1, 2016, Plaintiff entered a guilty plea on the firearms charges and was sentenced to a

four (4) to eight (8)-year term of imprisonment for same on June 13,  2016. (ECF No. 91-4 at 4.)

As such, Plaintiff's prior detention for the firearms charges extended beyond the period of

detention he served on the charges at issue. (Pl.'s Opp'n Mot. Summ. J. Exs. J, M.)[16]  Thus,

because Plaintiff was detained on other charges throughout the entire detention and prosecution

regarding his alleged assault of Knight, he did not suffer a deprivation of liberty.

    In view of the foregoing, summary judgment in favor of all Defendants is appropriate

regarding Plaintiff's malicious prosecution claim.

### D.  False Arrest

    Count IV of Plaintiff's Second Amended Complaint alleges False Arrest against "all the

Defendants involved in the prosecution of the fabricated criminal charges[,]" in violation of his

Fourth Amendment rights. (Sec. Am. Compl. ¶ 182.)  "To bring a claim for false arrest, a

plaintiff must establish '(1) that there was an arrest; and (2) that the arrest was made without

probable cause.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *James v. City*

---

[14] Plaintiff partially disputes the claim that he was incarcerated for a firearms "conviction" because he was not convicted at the time of the second charge. However, it is undisputed that Plaintiff was in custody for the charge, awaiting further proceedings.

[15] Prison records show Plaintiff was being housed at PICC since *at least* two months before the October 5, 2015 incident.  (Pl.'s Opp'n Mot. Summ. J. Ex. M.)

[16] The charges stemming from the October 5, 2015 incident were *nolle prossed* on June 15, 2016. (Pl.'s Opp'n Mot. Summ. J. Ex. J.)

*of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). However, "a prisoner cannot state a cognizable claim of false arrest or false imprisonment while he is already in custody for an unrelated offense." *Rosario v. Lynch*, No. 2:13-CV-01944, 2017 U.S. Dist. LEXIS 149825, at *16 (E.D. Pa. Sep. 15, 2017) (citing *McCabe v. City of Phila.*, No. 01-CV-3975, 2002 U.S. Dist. LEXIS 23500 at *4 (E.D. Pa. Nov. 13, 2002)).  Because Plaintiff was incarcerated during January of 2016 when he was arrested for the Aggravated Assault charge, he cannot state a cognizable False Arrest claim.

Accordingly, summary judgment is warranted on Count IV of Plaintiff's Second Amended Complaint.

### E.  Municipal Liability

"In certain cases, plaintiffs may recover against a city government for a deprivation of constitutional rights, but must show the deprivation can be attributed to the city itself." *Wright v. City of Philadelphia*, 685 F. App'x 142, 146 (3d Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "[Section] 1983 does not subject a city to liability solely because its employee violates a citizen's constitutional rights." *Id.* (citing *Monell*, 436 U.S. at 691; *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "A plaintiff can attribute a constitutional tort to the city itself by showing the injury was caused by city policy, by city custom, or by policymaking officials' deliberate indifference to constituents' constitutional rights." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). "Policy is made when a 'decisionmaker [with] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Id.* (quoting *Andrews*, 895 F.2d at 1480). "Custom . . . can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."

*Id.* at 147 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). "Custom stems from policymakers' 'acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity.'" *Id.* (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

In the final Count of his Second Amended Complaint, Plaintiff contends Defendants City and Giorla should be held liable because they failed to adequately train their employees, resulting in a violation of constitutional rights. (Sec. Am. Compl. ¶¶ 183-204.) "If the alleged policy or custom at issue is a failure to train or supervise (as it is here), the plaintiff must show that this failure amounts to deliberate indifference to the rights of persons with whom [the municipality's] employees will come into contact." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (citations and quotations omitted). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)).

To prove deliberate indifference, a plaintiff must show "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). "To prevail on such a theory, a plaintiff must demonstrate that a supervisor was on notice of a deficiency in his or her training program." *Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015) (citing *Connick v. Thompson*, 563 U.S. 51, 71 (2011)). "A pattern of violations puts municipal decisionmakers on notice that a new program is necessary, and 'their continued adherence to an approach that they know or should know has failed to

prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability." *Thomas,* 749 F.3d at 223 (quoting *Bryan Cnty.,* 520 U.S. at 407).

In the present case, the record establishes a genuine issue of material fact regarding deliberate indifference by the City.  First, the City's policymakers know that Corrections Officers will discipline inmates and therefore have policies in place to properly handle such situations.  Second, Plaintiff has produced evidence of Defendant Knight's history of mishandling "use of force" situations with other inmates and Defendant Giorla's actual knowledge of same. *See* SDMF ¶¶ 48, 50; Pl.'s Opp'n Mot. Summ. J. Ex. X (Sergeant Knight's Notice of 20-day suspension for mishandling an altercation with an inmate, signed by Commissioner Giorla); Pl.'s Opp'n Mot. Summ. J. Ex. AA (Sergeant Knight's Notice of Demotion in connection with a misuse of force against an inmate, signed by Commissioner Giorla); Pl.'s Opp'n Mot. Summ. J. Ex. DD (Sergeant Knight's Notice of Suspension for failing to contact a supervisor after his use of force with an inmate, signed by Commissioner Giorla). Thus, Plaintiff has established the second element by showing Defendant Knight has a history of mishandling "use of force" situations and has demonstrated a "pattern of violations" that should have put Defendant Giorla on notice of the deficiency.  Moreover, because the Eighth Amendment protects against excessive force, the mishandling of such situations will frequently lead to a deprivation of inmate's constitutional rights.  While Defendant Knight was punished for his prior infractions, he never received any additional training in response to his disciplinary incidents. (Pl.'s Opp'n Mot. Summ. J. Ex. HH at 35:19-23.)   Plaintiff produced expert testimony opining that the Philadelphia Prison System (hereinafter "PPS") should have taken "positive disciplinary corrective measures, primarily training, to prevent further misuse of force." (Pl.'s

Opp'n Mot. Summ. J. Ex. II at 222.)  Thus, a reasonable jury could find that the City acted with deliberate indifference.

Once deliberate indifference is established, a plaintiff must show that the failure to train has a  "causal nexus with [the plaintiff's] injury." *Thomas v. Cumberland County*, 749 F.3d 217 (3d Cir. 2014) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1028  (3d Cir. 1991)). "The causation inquiry focuses on whether 'the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)).  In *Thomas*, the Third Circuit reversed the grant of a defendant's request for summary judgment on this issue by reason of expert opinion evidence that a "lack of de-escalation training, among other things, contributed to the serious injuries that Thomas sustained." *Id.* at 226.  Further, the court pointed to its decision in *A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572 (3d Cir. 2004), which similarly denied summary judgment because an expert testified that the lack of training contributed to the plaintiff's injuries. *Id.*  In the present case, Plaintiff has introduced expert opinion that concludes the PPS' failure to train caused Plaintiff's injuries. *See* Pl.'s Opp'n Mot. Summ. J. Ex. II at 19-20 ("[T]he actions and/or inactions of Sgt. Knight and the PPS, as discussed in this report, were substantial factors causing the harm suffered by I/M Andrews."); ("[T]he harm suffered by I/M was the foreseeable consequence of Sgt. Knight and other involved officers not being reasonably trained and skilled in the use of force.").

Defendants herein have failed to properly rebut the evidence presented by Plaintiff in support of this claim, including the findings set forth in his expert's report.  (RSDMF ¶¶ 45-93.) Thus, a genuine issue of material fact exists regarding Defendants City and Giorla's deliberate

indifference towards Plaintiff's constitutional rights and resultant injury.  Accordingly, summary judgment on Count V of Plaintiff's Second Amended Complaint shall be denied.

### F.  Conclusion

For the reasons set forth above, summary judgment shall be granted as to: Plaintiff's Excessive Force claim against Defendants Giorla, Dotson, Martin and Love, Plaintiff's Malicious Prosecution claim against all Defendants, and Plaintiff's False Arrest claim against "all the Defendants involved in the prosecution of the fabricated criminal charges."  Summary judgment shall be denied with regard to Plaintiff's Retaliation claim against all Defendants except Giorla and Dotson, as well as Plaintiff's Municipal Liability claims.

An appropriate Order follows.

BY THE COURT:


/s/ C. Darnell Jones, II   J.